# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA CRAIG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-370-M |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income (SSI) under the Social Security Act. United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative findings.

## I. PROCEDURAL BACKGROUND

Plaintiff's application for SSI was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 13-21). The Appeals Council denied Plaintiff's request for review. (TR. 5-7). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 7, 2011, the application date. (TR. 15). At step two, the ALJ determined that Plaintiff had severe impairments involving: obesity, hypertension, status post carpal tunnel release, status post right knee tendon repair, generalized anxiety disorder, post-traumatic stress disorder, and depression. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 15).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (TR. 19). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> Lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations; no contact with the general public.

(TR. 17).

Based on the finding that Plaintiff could not perform her past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC in a

question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 52). Given the limitations, the VE testified that Plaintiff could perform three jobs. (TR. 52-53). The ALJ adopted the testimony of the VE and concluded that Ms. Craig was not disabled based on her ability to perform the jobs identified (TR. 20).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges legal error in the evaluation of: (1) an opinion from a treating counselor and (2) her obesity.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE EVALUATION OF TREN BROWN'S OPINION

Ms. Craig has alleged error due to the ALJ's failure to discuss an opinion from Plaintiff's counselor, Tren Brown. (ECF No. 12:4-5). Ms. Brown is a Licensed Behavioral Practitioner and a Licensed Drug and Alcohol Counselor who has evaluated Ms. Craig in a professional capacity. *See* TR. 314-320. Ms. Brown identifies herself as Plaintiff's

3

"treating physician" and Plaintiff alleges error in the ALJ's failure to consider Ms. Brown's opinion, although Plaintiff admits that "it is unclear if this was actually a Consultative Exam (CE) scheduled by SSA, or if it truly was a treating source." (ECF No. 1:4). Regardless of how Ms. Brown is classified, the ALJ owed a duty to consider the opinion and explain the amount of weight, if any, he accorded it. But the ALJ failed even to mention Ms. Brown's opinion and the omission constitutes legal error.

## A. ALJ's Duty to Consider Various Types of Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 416.927(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, 365 F.3d at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

If controlling weight is declined, the ALJ must assess the opinion under the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v.*

4

*Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 416.927. The ALJ must apply these factors when assessing *any* medical opinion, including evidence from "other sources," such as licensed professional counselors, who do not qualify as "acceptable medical sources." *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006); *Martinez v. Astrue*, 422 F. App'x. 719, 726 (10th Cir. 2011); Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *4, *6 (SSR 06-3p). Although the ALJ need not explicitly discuss each factor, the reasons stated must allow for meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 06-3p at *5.

### B. Psychological Opinion from Tren Brown

At the administrative hearing, Plaintiff stated that she had received counseling from Ms. Brown approximately two times per week since 2008. (TR. 41). On February 24, 2012, Ms. Brown examined Plaintiff and prepared a 5-page report. (TR. 316-320). In the report, Ms. Brown stated that Ms. Craig had a history of severe anxiety, depression, and PTSD and took medication for depression which was prescribed by a psychiatrist. (TR. 316). Ms. Brown described Ms. Craig as having poor social skills, a flat affect, and difficulty walking due to her obesity. (TR. 318). Ultimately, Ms. Brown diagnosed Plaintiff with Major Depression, recurrent, moderate and Panic Disorder. (TR. 319). In sum, Ms. Brown stated:

> I believe [Ms. Craig's] current condition would continue to result in difficulty with work-related activities. She continues to show significant

problems with depression and anxiety. She is quite withdrawn and socially isolated, and has panic attacks whenever she is confronted with public situations. . . .  It is unclear how the Client's . . . persistent anxiety, depression, and panic attacks may hinder her long-term ability toward adequate psychosocial functioning in the workplace.

(TR. 320).

### C. Error in the ALJ's Analysis of Ms. Brown's Opinion

Regardless of how the Court classifies Ms. Brown, the ALJ had a duty to consider her opinion and explain the weight he accorded it, if any, in order to permit meaningful judicial review. *See supra*. Here, the ALJ's decision omits any mention of Ms. Brown's opinion, which is especially egregious considering the opinion stated that Ms. Craig's "persistent anxiety, depression, and panic attacks may hinder her long-term ability toward adequate psychosocial functioning in the workplace." (TR. 320). This opinion clearly conflicts with the ALJ's RFC determination which states that Ms. Craig "can respond appropriately to . . . usual work situations." (TR. 17). The ALJ may have had legitimate reasons for discounting or even rejecting Ms. Brown's opinion. But because the ALJ completely omitted any mention of the opinion, the Court cannot engage in meaningful judicial review.

Ms. Colvin admits that the ALJ failed to discuss Ms. Brown's opinion, but in doing so she incorrectly states that the opinion was a "check-box 'mental functioning assessment questionnaire' . . . filled out by [Ms.] Brown . . . after a one-time examination." (ECF No. 19:11). The opinion at issue was written in narrative form, described Plaintiff's various diagnoses and functional limitations, and evidence from Plaintiff and Ms. Brown confirmed a treatment relationship since 2008. *See* TR. 41, 314, 320; 455. Furthermore, Defendant

6

attempts to justify the ALJ's decision by arguing that the RFC, was supported by substantial evidence, citing: (1) statements that Ms. Craig made to her primary care physician "sporadically report[ing] depression and anxiety symptoms," (2) examples of doctor's office appointments where Plaintiff did not discuss mental health issues with her physician, (3) reports from a mental health counselor that Plaintiff was "doing better," (4) GAF scores which indicated "only mild to moderate symptoms," (5) Plaintiff's activities of daily living and work history, (6) opinions from State Agency psychologists, and (7) the ALJ's determination at step two that Ms. Craig suffered from "severe" depression, anxiety, and PTSD. (ECF No. 19:9-11). But the issue is not whether the RFC was based on substantial evidence, but whether the ALJ followed the correct legal standards in assessing Ms. Brown's opinion.

Ms. Colvin also attempts to salvage the ALJ's decision by stating "M[s]. Brown did not identify any specific work-related functional limitations, but rather ultimately concluded that it was "unclear" how Plaintiff's persistent anxiety, depression, and panic attacks could hinder her long-term ability toward psychosocial functioning in the workforce." (ECF No. 19:11). Defendant is correct, but her justification is insufficient because the *ALJ* did not discount Ms. Brown's opinion based on a lack of clarity regarding Plaintiff's long-term ability to function in the workplace and the Court is not permitted to supply such a *post hoc* rationale. *See Haga v. Astrue,* 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173

7

(10th Cir. 2005) (the Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner.").

Finally, Defendant cites the ALJ's rejection of a November 2012 report from Ms. Brown, because according to the ALJ, it was "wholly inconsistent with the substantial evidence of record." (ECF No. 19:12; TR. 17). But the issue is not the ALJ's treatment of the November opinion, rather the ALJ's complete omission of Ms. Brown's February 2012 opinion.

The ALJ had a duty to consider Ms. Brown's February 2012 opinion, explain the weight given, and provide an adequate rationale which would allow a reviewing party to follow the ALJ's reasoning. The ALJ erred in this regard by completely omitting any discussion of the opinion and the error was exacerbated because the opinion conflicted with the RFC and could have accounted for additional limitations. Accordingly, remand is appropriate.

## VI. ERROR IN THE CONSIDERATION OF OBESITY

As alleged by Ms. Craig, the ALJ failed to adequately consider the effects of her obesity when assessing the RFC.

### A. ALJ's Duty to Consider Obesity

Social Security Ruling 02–1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 at *1, *3 (Sept. 12, 2002) (SSR 02-1p). At step two, obesity will be found to be a "severe" impairment when, alone, or in combination with another medically determinable impairment, it

significantly limits an individual's physical or mental ability to do basic work activities. *Id.* at *4. At step three, the Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00(Q).

At step four, when assessing an individual's RFC, the ALJ "must consider any additional and cumulative effects of obesity." *Id.* For example, fatigue may affect an obese individual's ability to sustain work activity and the combined effects of obesity with other impairments might be greater than may be expected without obesity. SSR 02-1p at *6. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.*

### B. Error in the ALJ's Consideration of Ms. Craig's Obesity

At the administrative hearing, Plaintiff testified that she was 5'6" tall and weighed approximately 270 pounds. (TR. 35). Plaintiff's testimony is consistent with records submitted by various medical professionals which reflect Ms. Craig's weight between 257 and 292 pounds during the disability period. (TR. 301, 324, 359, 367, 468). Ms. Craig's weight translated to a body mass index (BMI) ranging between 41.5 and 47.1—levels which are consistent with "extreme" obesity, which the SSA defines as

9

"representing the greatest risk for developing obesity-related impairments." SSR-02-1p at *2.

At step two, the ALJ expressly found that Plaintiff's obesity was a severe impairment. (TR. 15). As a result of this finding, the ALJ was obligated to address the functional restrictions associated with the obesity. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), (c), (e), (g). Further, in assessing Plaintiff's RFC, the ALJ was required "to give adequate consideration to the effect of [Plaintiff's] obesity in combination with her other severe impairments." SSR 02-1p at *6.

The ALJ mentions Plaintiff's weight three times in the opinion. First, in summarizing Ms. Craig's testimony, the ALJ stated: "[Ms. Craig] is 5'6" and weighs 270 pounds." (TR. 18). Next, the ALJ stated that the medical record established that Ms. Craig had a history of obesity. (TR. 18). Finally, at step two, the ALJ found that Ms. Craig suffered from "severe" obesity. (TR. 15). These three statements represent the entirety of the ALJ's consideration of Plaintiff's obesity.

As stated, Plaintiff's BMI which ranged from 41.5 to 47.1 classified her as "extremely" obese for purposes of the sequential evaluation process. *See* SSR 02-1p at *2. Upon such classification, the ALJ was required to analyze the functional loss and limitations caused by the obesity, both alone and in combination with other impairments. *See id.* at *6. Although the ALJ accepted Plaintiff's obesity as a severe impairment, the ALJ did not specifically identify "any functional limitations resulting from the obesity in the RFC assessment," or adequately explain why there were no such limitations, as required. *See id.* at *6-*7; TR. 15-21. Nor did the ALJ address whether

10

Plaintiff's obesity affected or exacerbated her other severe impairments of depression, or status post right knee tendon repair, as instructed by SSR 02-1p. *See* SSR 02-1p at *3 ("Obesity may also cause or contribute to mental impairments such as depression."), *4 (requiring ALJ to "consider the possibility of coexisting or related conditions, especially as the level of obesity increases").

The Commissioner argues that the ALJ's consideration of Plaintiff's obesity was adequate because: (1) "Plaintiff does not identify any evidence of functional loss related to obesity—and certainly no evidence that would have required restrictions beyond those already enumerated by the ALJ in the RFC" and (2) "no medical professional opined that Plaintiff had physical limitations related to her obesity." (ECF No. 19:14-15). Defendant's arguments are not persuasive.

First, Plaintiff's failure to expressly allege functional loss related to obesity as a disabling impairment is irrelevant in light of the ALJ's determination that the obesity was a severe impairment at step two. In light of the step two finding, the ALJ was required to consider the effect of the obesity throughout the remainder of the disability process. *See* SSR 02-1-p at *1; *see also Grotendorst v. Astrue*, 370 F. App'x. 879, 883 (10th Cir. 2010) (noting that "*all* medically determinable impairments, severe or not, must be taken into account at [the] later steps.") (emphasis in original); 20 C.F.R. § 416.945(a)(2) (requiring that all medically determinable impairments be considered when assessing the RFC).

Second, contrary to Defendant's argument otherwise, a medical professional *did* render an opinion regarding limitations owing to Plaintiff's obesity. During her in-person

11

evaluation of Plaintiff, Ms. Brown noted that Ms. Craig was "strugg[ling] with walking due to obesity." (TR. 318). This opinion was vital in light of: (1) the ALJ's findings that Ms. Craig could walk for 6 hours during an 8-hour workday and (2) the SSA's statement that "An [obese] individual may have limitations in . . . walking[.]" SSR 02-1p at *6. (TR. 17). But as discussed, the ALJ completely ignored Ms. Brown's opinion, which constituted reversible error on its own. *See supra*.

Third, the absence of limitations assessed by any other physician tied directly to Plaintiff's obesity does not excuse the ALJ's duty to make an independent assessment and explain his findings. *See* SSR 02-1p at *1, *3, *7; *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) (rejecting claim that an RFC for medium work was supported by a lack of diagnostic tests showing the claimant could not occasionally lift 50 pounds, noting that "the absence of [such] evidence is not evidence.") (brackets in original).

Furthermore, the ALJ is charged with considering the effects of obesity in combination with the claimant's other impairments, both severe and non-severe. *See* SSR 02-1p at *6. Thus, the absence of limitations assessed by physicians and tied to obesity alone would be insufficient to excuse the ALJ's duty to consider the combined effects of obesity with other impairments. As noted by the SSA, the ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments" because "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Rather, the ALJ must "explain how he reached his conclusions on whether obesity caused any

12

physical or mental limitations." *Baker v. Barnhart*, 84 F. App'x. 10, 14 (10th Cir. 2003) (internal quotation marks omitted). *See DeWitt v. Astrue,* 381 F. App'x., 786 (10th Cir. 2010); *Hamby v. Astrue,* 260 F. App'x. 108 (10th Cir. 2008); *See also Smith v. Colvin,* 625 Fed. Appx. 896 (10th Cir. 2015).[1]

In sum, the ALJ provided no discussion of the effect of Plaintiff's obesity, either alone, or in combination with her other impairments. This error undermines the RFC finding and warrants remand.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED** and **REMANDED** for further administrative findings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **January 11, 2016**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

---

[1] In *Smith*, unlike the *Baker*, *DeWitt*, and *Hamby* cases, all unpublished, the Court found the ALJ's discussion of claimant's obesity adequate, stating that it declined to impose a requirement on the ALJ to "note the absence of any evidence that her obesity resulted in additional functional limitations or exacerbated any other impairment." *Smith* at 899. Although *Smith* is more recent, it provides little in the way of detailed guidance, thus the undersigned finds the earlier cases persuasive.

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on December 28, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE